## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JOYCE MILLER,**

      **Plaintiff,**

      **v.**                                       **Case No. 22-CV-1137-JAR**

**DOLLAR GENERAL CORPORATION**
**And DG RETAIL LLC,**

      **Defendants.**

---

## MEMORANDUM AND ORDER

Plaintiff Joyce Miller brings this action alleging negligence, specifically premises liability, and seeking damages against Dollar General Corporation and DG Retail LLC ("Defendants") resulting from her slip and fall within a Dollar General store in Haysville, Kansas in June 2020.  Before the Court is Defendants' motion for summary judgment (Doc. 34).  The motion is fully briefed, and the Court is prepared to rule.  As described more fully below, the Court grants the motion.[1]

## I.  Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[2]  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

---

[1] Because the Court grants the motion for summary judgment, Defendants' motion to exclude opinion testimony of Jerry Birnbach (Doc. 53) is moot.

[2] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[3] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the non-moving party."[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7]  Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[11]  The nonmoving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12]

---

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Lab'ies, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

[8] *Anderson*, 477 U.S. at 256.

[9] *Id.*

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[11] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000).

[12] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[13]

## II.   Uncontroverted Facts

The following facts are uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff as the nonmoving party.  Plaintiff Joyce Miller slipped and fell on spilled liquid soap in a checkout aisle of the Dollar General store in Haysville, Kansas, on June 25, 2020.  At the time of Plaintiff's fall, Jedidiah Hayes was working as the cashier at the register in the checkout aisle where Plaintiff fell.  Only one other employee was on duty at that time.  Plaintiff's fall and the minutes leading up to her fall were captured by store surveillance video.  Review of the surveillance video reveals that the video was taken from a still camera installed in the ceiling over the checkout counter and aimed directly downward, providing the viewer with an aerial view of the counter, the customer at the counter, and the cashier.  Both parties rely heavily on the surveillance video in their summary judgment submissions.

In large part, the parties agree as to what is depicted in the surveillance video.  They agree that the video footage shows Mr. Hayes working at the register as an unknown shopper approaches the checkout counter and that the floor area directly in front of the checkout counter is free from spills at the time the unknown shopper approaches the counter.  They further agree that the video shows the unknown shopper removing products from her cart and placing them on the counter for Mr. Hayes to scan.  As the unknown shopper is removing products from her cart, two or more bottles in the shopping cart fall over onto their sides.  The unknown shopper takes one of the bottles out of the cart, places the bottle on the checkout counter, observes that the lid

---

[13] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

of the bottle is open, and closes the lid of the bottle while it is on the checkout counter.  A few seconds later, she removes another bottle from her cart, places it on the checkout counter, and snaps the lid of that bottle closed while it is on the checkout counter.  Throughout this time, Mr. Hayes continues to scan and bag each item without incident.  After the checkout process is complete and the unknown shopper departs from the checkout aisle, the video depicts an area of shine or glare on the floor that was not visible before the unknown shopper arrived at the checkout station.  The parties agree that one or more items in the unknown shopper's cart created the spill on the floor that caused Plaintiff's injuries.

Approximately six minutes after the unknown shopper leaves the checkout aisle, Plaintiff approaches the checkout counter while pushing a shopping cart.  Plaintiff's right foot plants on the area of clear liquid and slides forward, causing her to fall.  Plaintiff testified that the liquid was soapy and smelled like shampoo and that she did not see the liquid before she fell.  She further testified that, prior to her fall, she shopped at that specific Dollar General store two to four times per week (sometimes more than once in a day) and had never seen a spill on the floor. Mr. Hayes avers that he never saw any spill of any liquid in front of the checkout counter in the ten minutes leading up to Plaintiff's fall.  Mr. Hayes also avers that, during the ten minutes prior to Plaintiff's fall, he did not notice any bottles with open lids or leaks as he checked out customers and scanned products.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

III.    **Discussion**

Before turning to the merits of Defendants' motion, the Court resolves a procedural issue teed up by Plaintiff filing a motion for leave to file a supplemental response to the motion for

summary judgment nearly five weeks after the filing of Defendants' reply in support of their motion.[14]  In her motion, Plaintiff seeks to supplement her response with deposition testimony taken after the summary judgment briefing but before the close of discovery.  The motion is denied.  In her response to the motion for summary judgment, Plaintiff did not indicate that additional discovery was necessary or that she could not present certain facts essential to oppose Defendants' motion.[15]  In any event, the Court has reviewed the substance of Plaintiff's supplement and notes that the supplement fails to create a genuine dispute with respect to any material issue described below.

The parties agree that this negligence case is governed by Kansas substantive law.[16]  In order to establish liability for negligence, the plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages.[17]  In a claim for premises liability, an owner or operator of a place of business that is open to the public owes a duty of reasonable care under all of the circumstances in maintaining the premises.[18]  The owner or operator of the business must warn the public of any dangerous condition that the owner or operator knows about or should know about if the owner or operator had exercised reasonable care in tending to the business.[19]

---

[14] Doc. 49.

[15] *See* Fed. R. Civ. P. 56(d).

[16] *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1278 n.1 (10th Cir. 2021) (federal court exercising subject-matter jurisdiction based on 28 U.S.C. § 1332 applies the substantive law of the state in which it sits, including that state's choice-of-law principles) (citing *Pepsi-Cola Bottling Co. of Pittsburg, Inc., v. PepsiCo, Inc*., 431 F.3d 1241, 1255 (10th Cir. 2005)); *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985) (Kansas courts apply the law of the state where tort occurred).

[17] *See Adams v. Bd. of Sedgwick Cnty. Commr's*, 214 P.3d 1173, 1179 (Kan. 2009).

[18] *Wagoner v. Dollar Gen. Corp*., 955 F. Supp. 2d 1220, 1224 (D. Kan. 2013) (citing *Endsley v. Am. Drug Stores, Inc*., 93 P.3d 745, 2004 WL 1609203, at *2 (Kan. Ct. App. 2004)); *see also* PIK Civ. 4th 126.02.

[19] *Wagoner*, 955 F. Supp. 2d at 1224; PIK Civ. 4th 126.03.

Defendants contend that summary judgment on Plaintiff's claims is required. Specifically, they assert that no reasonable jury could find that Defendants had actual or constructive knowledge of the spill prior to Plaintiff's fall and that the "mode of operation" rule does not apply to relieve plaintiff of her burden to show actual or constructive knowledge of the spill.   Separately, defendant Dollar General Corporation contends that it cannot be held liable for Plaintiff's injuries because there is no evidence from which a jury could conclude that Dollar General Corporation is the owner, occupier or possessor of the premises where Plaintiff's fall occurred.

### A.     Mode of Operation Rule

Generally, before a defendant may be held liable under Kansas premises liability law for an injury resulting from a dangerous condition, actual or constructive notice of the condition on the part of the defendant must be shown.[20]  The Supreme Court of Kansas carved out an exception to this traditional rule in *Jackson v. K-Mart Corporation*, where the Court expressly recognized the "mode of operation rule," which allows a plaintiff to recover without a defendant's actual or constructive knowledge of a dangerous condition if the plaintiff was injured "due to a condition inherent in the way the store is operated."[21] The mode of operation doctrine looks to the actual mode of operation—a specific method in which the business conducts itself—not to the events surrounding the accident.[22] In *Jackson*, for example, K-Mart operated a cafeteria within the store and permitted customers to consume in retail areas of the store food and drinks that had been purchased in the cafeteria.[23]  The injured plaintiff slipped on

---

[20] *See Jackson v. K–Mart Corp.*, 840 P.2d 463, 465 (Kan. 1992).

[21] *Id.*

[22] *Hembree v. Wal–Mart of Kan.*, 35 P.3d 925, 927 (Kan. Ct. App. 2001).

[23] *Jackson*, 840 P.2d at 466.

juice that another customer had purchased in the cafeteria and had spilled in a retail aisle of the store.[24]  The Supreme Court affirmed the Court of Appeals' reversal of summary judgment for the defendant, finding that the dangerous condition existed as a result of K-Mart's policy and practice that allowed customers to take food and beverages purchased at the in-store cafeteria to other parts of the store.[25]  Another "classic" setting for the application of the mode of operation rule is when a customer slips on produce in the produce section of a grocery store, where customers are routinely permitted to handle and select unpackaged produce from open bins.[26] Regardless of the setting, the mode of operation rule applies only when a company's adoption of a particular mode of operation makes it reasonably foreseeable that a dangerous condition could regularly occur.[27]

In their motion for summary judgment, Defendants contend that Plaintiff may not rely on the mode of operation rule to waive the traditional notice requirement.  According to Defendants, Plaintiff has not identified any particular "mode of operation" adopted by Defendants in which Defendants could reasonably anticipate that spills in the checkout aisle would regularly arise.[28] As argued by Defendants, while customers at the store where Plaintiff was injured were permitted to select, carry and examine merchandise for themselves, there is no evidence that customers were encouraged or expected to open sealed containers while in the checkout aisle or at any other time in the store.  In response, Plaintiff directs the Court to no cases waiving the

---

[24] *Id*. at 464.

[25] *Id*. at 470.

[26] *See Elrod v. Walls, Inc*., 473 P.2d 12, 16 (Kan. 1970) ("When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor and if the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate.").

[27] *Hembree*, 35 P.3d at 928; PIK Civ. 4th 126.05.

[28] PIK Civ. 4th 126.05.

traditional notice requirement on similar facts.  Rather, Plaintiff urges that Defendants permitted customers to remove liquid products like shampoo from the shelves and to open and close such bottles in the store.  The Court rejects this argument.  Plaintiff has come forward with no evidence that Defendants adopted a particular mode of operation that encouraged or permitted customers to open sealed bottles of liquid in the store or any evidence that Defendants were even aware that customers opened sealed bottles on occasion.  Certainly, there is no evidence in the record that Defendants maintained a business practice or policy permitting customers to open sealed containers in the store or adopted any specific practice that created a particular risk that liquids would leak from the containers and end up on the floor of the store. [29]

In the absence of evidence that customers were invited or expected to open sealed containers in the store, no reasonable jury could find that the mode of operation rule applies in this case.[30]

### B.    Actual or Constructive Notice

Because Plaintiff has not shown the existence of a genuine issue of material fact with respect to whether the mode of operation rule applies, she must show that Defendants had actual

---

[29] *See Layden v. Target Corp.*, 768 Fed. Appx. 152, 158 (3d Cir. 2019) (rejecting application of the mode of operation rule where the plaintiff identified "no aspect of [the item's] characteristics or packaging that invited removal"); *Cuzco v. Wal-Mart Stores, Inc.*, No. 17-07125 (EP) (CLW), 2022 WL 4300183 at *4 (D.N.J. Sept. 19, 2022) (rejecting application of mode of operation rule; fact that Wal-Mart's manager was aware that customers sometimes opened sealed containers in the store was insufficient to establish that it was Wal-mart's business practice to permit customers to open sealed containers while in the store); *Teixeira v. Walmart Stores, Inc.*, No. 18-13103 (KM) (ESK), 2021 WL 4272828, at *3 (D.N.J. Sept. 16, 2021) (explaining that "cases regularly reject the application of the mode-of-operation rule where it is based on nothing more than a store's placing of merchandise in closed containers on shelves that are accessible to shoppers. Something more, such as a particular risk of spilling as a result of self-service, must be present.").

[30] *Cuzco*, 2022 WL 4300183, at *3 (court rejected application of the mode of operation rule because nothing about the presence of liquid in the checkout aisle "is a regular or inevitable feature of Walmart's business practice of permitting customers to select the containers themselves."); *Betancourt v. Home Depot U.S.A., Inc.*, No. 16-07255 (WHW) (CLW), 2018 WL 3954854, at *4 (D.N.J. Aug. 16, 2018) (mode of operation doctrine did not apply because spillage near a cash register was insufficient to show that a specific business practice made the dangerous condition foreseeable).

or constructive notice of the dangerous condition.[31]  In an effort to show that Defendants had actual knowledge of the spill, Plaintiff sets forth three arguments: that Mr. Hayes had "actual knowledge that a customer removed open bottles of shampoo from her shopping cart and closed them in front of him;" that Defendants had actual knowledge of the spill because the spill can be seen on the surveillance video; and that because the spill can be seen in the video, Mr. Hayes must have been able to see it himself.  Each of these arguments is unpersuasive.

Even assuming that Mr. Hayes observed the unknown shopper removing open bottles of shampoo from her cart and closing those bottles on the counter, these facts do not establish that Mr. Hayes had actual knowledge of a dangerous condition for purposes of premises liability. Kansas law requires actual notice of the dangerous condition—not merely awareness of a possibility that a dangerous condition might develop.[32]  Moreover, the fact that the spill can be seen in the surveillance video does not establish actual knowledge on the part of Defendants in the absence of evidence that an employee was monitoring the video in real time.[33]  Plaintiff points to no evidence in the record that an employee was viewing footage from Defendants' cameras at the time of the spill and the video itself does not depict Mr. Hayes or any other employee observing the spill.  Finally, there is no evidence supporting Plaintiff's argument that the spill would have been visible to Mr. Hayes because it is visible in the surveillance video.  As described earlier, the video shows an aerial view of the checkout counter, the customer at the

---

[31] *See Jackson v. K–Mart Corp.*, 840 P.2d 463, 465 (Kan. 1992).

[32] *Didde v. City of Chapman*, 283 P.3d 840, 2012 WL 3822735, at *8 (Kan. Ct. App. 2012) (no actual knowledge of dangerous condition despite knowledge of circumstances "which could cause" dangerous condition).

[33] *See Aitcheson v. Dolgencorp, LLC*, No. 3:18-cv-174, 2020 WL 411037 at *4, (N.D.W. Va. Jan. 24, 2020) (no actual knowledge of fallen ladder that created hazard despite fact that surveillance video captured ladder falling; rejecting argument as speculative that a store employee "could have been able to see the ladder fall from the security cameras"); *Townson v. Wal-Mart Stores, Inc*., No. 3:15-cv-3808-N, 2017 WL 11465358, at *3 (N.D. Tex. May 30, 2017) (no evidence of actual knowledge of dangerous condition despite video footage showing condition where video did not show Wal-Mart employees observing condition).

counter, and the cashier.  The overhead view provided by the camera captures the floor where

customers stand while at the checkout counter.  As shown in the video, however, Mr. Hayes is

positioned not only behind the counter itself, but behind plexiglass that is hanging between the

customer and behind the register's scanning equipment and display screen.  In short, there is

simply no evidence from which a reasonable jury could conclude that Mr. Hayes actually

observed the spill from his position behind the checkout counter.

In the absence of any evidence that Defendants had actual knowledge of the spill,

Plaintiff must come forward with evidence from which a jury could reasonably conclude that

Defendants should have known about the spill.  Before a landowner may be charged with

constructive knowledge of a dangerous condition, the plaintiff generally must show that the

condition existed for such a length of time that in the exercise of ordinary care the landowner

should have known about it.[34]  Here, Plaintiff makes no argument concerning the length of time

the condition existed.[35]  Rather, Plaintiff argues only that Mr. Hayes should have known about

the spill because the video shows the unknown shopper closing the lids of two shampoo bottles

"directly in front of him."[36]  The problem with this argument is that it requires the jury to engage

in speculation and guesswork.  The video shows only an overhead view of the checkout area; Mr.

---

[34] *Brock v. Richmond-Berea Cemetery Dist.*, 957 P.2d 505, 511 (Kan. 1998); PIK Civ. 4th 126.04 (jury may find an owner of a premises liable for an injury that resulted from a dangerous condition if "the condition had existed for such a length of time that in the exercise of reasonable care the [owner] should have known of it").

[35] Plaintiff's failure to make this argument is not surprising, as it is undisputed that the spill was present for approximately six minutes.  *See, e.g., McQueen v. Costco Wholesale Corp.*, No. 2:20-cv-452, 2022 WL 901588, at *3 (D. Utah Mar. 28, 2022) (concluding as a matter of law that no reasonable jury could find that puddle was on the floor long enough that defendant's employees should have discovered it when evidence showed that puddle was on floor less than ten minutes).

[36] Plaintiff also states, without explanation, that the video demonstrates that "spills of this kind were common at this store."  The court construes this statement as bearing only on Plaintiff's argument that the mode of operation rule should apply in this case.  To the extent Plaintiff suggests that the number of spills in the checkout aisle was such that Mr. Hayes should have inspected the aisle before Plaintiff's fall, the evidence simply does not support the argument.  The video shows only one spill—the one that caused Plaintiff's fall.  Even considering the deposition testimony referenced in Plaintiff's untimely supplemental response, that evidence shows that Mr. Hayes was aware of no more than five spills in the checkout aisle over the three years that he worked at the store.

Hayes' face is never shown.  As a result, no reasonable jury, viewing the surveillance video, could find that Mr. Hayes actually observed the unknown shopper closing the bottles.[37]  While the unknown shopper can be seen snapping the lids closed behind the plexiglass, Mr. Hayes never stops reaching for, scanning and bagging other items.  Moreover, Mr. Hayes averred that he never noticed any bottles with open lids or leads.  The video footage is not sufficient to controvert this evidence.

Even assuming that a jury could somehow conclude that Mr. Hayes observed the shopper closing the shampoo bottles, there is no evidence from which a jury could make the additional inferential leap that Mr. Hayes therefore should have known that the contents of the bottles had leaked onto the floor.  In the video, Mr. Hayes can be seen picking up the bottles to scan and bag them.  As he does so, Mr. Hayes does not break his pace, does not take a closer look at the bottles (as someone might do if the bottles were leaking or wet), and does not act in any way suggesting an understanding that the bottles had been leaking.  The video is devoid of any other evidence that Mr. Hayes should have known about the spill.  In fact, the video shows another customer utilizing the checkout aisle without incident after the unknown shopper departs from the aisle but before Plaintiff arrives in the checkout aisle.

For the foregoing reasons, Plaintiff has failed to come forward with evidence from which a reasonable jury could conclude that Defendants had actual or constructive notice of the dangerous condition that resulted in her injuries.  Summary judgment in favor of Defendants is warranted.

---

[37] *See Schmicker v. Target*, No. 17-11628, 2020 WL 2487661, at *3 (D.N.J. May 13, 2020) (surveillance video in slip-and-fall case insufficient to establish knowledge of spill where it was "entirely unclear where the employee is looking" in the video).

### C.    *Liability of Defendant Dollar General Corporation*

Defendants assert that summary judgment is warranted in favor of defendant Dollar General Corporation ("DGC") for an additional reason.  According to Defendants, DGC is not the owner, occupier, or possessor of the premises where Plaintiff fell and, therefore, DGC cannot be held liable for Plaintiff's injuries.  Under Kansas law, "[t]o hold a defendant liable for failure to keep premises in a reasonably safe condition, the defendant must be the owner, occupier, or possessor of the premises."[38]  The "owner, occupier, or possessor" language is intended to focus the inquiry on whether the party to be held liable had sufficient control over the condition causing the injury.[39]  In support of their motion for summary judgment, Defendants have submitted an interrogatory response in which DGC states that Defendant DG Retail LLC is the tenant-in-possession of the premises and the operator of the store where Plaintiff was injured and that DGC does not operate the store or have any interest in the premises.  Defendants have also set forth these facts in their Statement of Fact 19, which Plaintiff has failed to controvert.

Plaintiff presents no evidence that DGC owns, occupies, or possesses the premises.  Rather, Plaintiff argues that DGC is "actively involved in training" store employees—a fact that has no bearing on premises liability.  Plaintiff also suggests that Defendants' evidence that DGC does not own, occupy or possess the premises is somehow faulty because it is not in the form of deposition or affidavit testimony.  But the federal rules expressly permit a party to support a factual assertion with an interrogatory response, as Defendants have done here.[40]

---

[38] *Gragg v. Wichita State Univ.*, 934 P.2d 121, 130 (Kan. 1997) (quoting *Miller v. Zep Mfg. Co.*, 815 P.2d 506, 513 (1991)).

[39] *See id.*

[40] *See* Fed. R. Civ. P. 56(c)(1)(A).

Because Plaintiff has not come forward with any evidence to show a genuine dispute as to whether DGC owns, occupies, or possesses the property where Plaintiff was injured, no reasonable jury could find DGC liable for Plaintiff's injuries.  The Court grants summary judgment in favor of DGC for this additional, independent reason.[41]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' motion for summary judgment (Doc. 34) is **granted in its entirety;** Plaintiff's motion for leave to file a supplemental response (Doc. 49) is **denied;** Defendants' motion to exclude opinion testimony of Jerry Birnbach (Doc. 53) is **moot.**

**IT IS SO ORDERED.**

Dated: April 17, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[41]*Davis v. Dollar Gen. Corp., LLC*, No. 3:20-cv-274-KHJ-LGI,2021 WL 3645107, at *3 (S.D. Miss. July 23, 2021) (granting summary judgment to DGC on premises liability claim where the plaintiff offered no evidence controverting DGC's evidence that it did not own, operate, or control any Dollar General stores); *Wagoner v. Dollar Gen. Corp.*, 955 F. Supp. 2d 1220, 1224 (D. Kan. 2013) (same).